01
02
03
04
05
06        UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
07                   AT SEATTLE

08  ROBIN JERMYN,                        )  CASE NO. C06-0542-RSL
                                         )
09         Plaintiff,                    )
                                         )
10         v.                            )  REPORT AND RECOMMENDATION
                                         )  RE: SOCIAL SECURITY
11  JO ANNE B. BARNHART, Commissioner    )  DISABILITY APPEAL
    of Social Security                   )
12                                       )
           Defendant.                    )
13  _____)

14        Plaintiff Robin Jermyn proceeds through counsel in his appeal of a final decision of the

15  Commissioner of the Social Security Administration (Commissioner). The Commissioner denied

16  plaintiff's application for Supplemental Security Income (SSI) and Disability Insurance (DI)

17  benefits after a hearing before an Administrative Law Judge (ALJ).

18        Having considered the ALJ's decision, the administrative record (AR), and all memoranda

19  of record, it is recommended that this matter be REMANDED for further administrative

20  proceedings.

21  / / /

22  / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1963.[1]  He graduated from high school and completed a year of vocational training in welding.  Plaintiff previously worked as a forklift mechanic and wing line machinist.

With filing months of November 2002 and January 2003, plaintiff filed applications for SSI and DI benefits respectively.  (AR 67-69, 454-56.)  He alleged disability since March 30, 2000 due to back problems.  His applications were denied at the initial level and on reconsideration, and he timely requested a hearing.

On April 6, 2005, ALJ John Bauer held a hearing, taking testimony from plaintiff and vocational expert (VE) Mary Lou Minton.  (AR 471-504.)  On July 28, 2005, ALJ Bauer issued a decision finding plaintiff not disabled.  (AR 18-30A.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on March 15, 2006, making the ALJ's decision the final decision of the Commissioner.  (AR 7-10.)  Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date.[2] At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's degenerative disc disease did not meet or equal the criteria for any listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess RFC and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ assessed plaintiff's RFC and found him unable to perform past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. The ALJ found plaintiff capable of making an adjustment to work existing in significant numbers in the national economy, including work as a surveillance systems monitor, document preparer/microfilm operator, and parking lot attendant/signaler.

      This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

---

[2] It should be noted that, while the ALJ describes an alleged onset date of May 31, 1999 in his decision, plaintiff had changed that date to March 30, 2000 on his SSI and DI applications. (AR 67, 454.) Also, while the ALJ concludes in the findings portion of his decision that plaintiff had not engaged in substantial gainful activity (SGA) since his alleged onset date, he states in the body of the decision that, based on earnings in the year 2000 indicating SGA, plaintiff "has not engaged in SGA since January 1, 2003." (AR 20, 28.) On remand, the ALJ should clarify both the onset date and the date after which plaintiff is deemed to have not engaged in SGA.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues that the ALJ erroneously rejected the opinions of treating physician Dr. Dean Williams, failed to evaluate adequately plaintiff's obesity and depression, proffered a hypothetical to the VE that was inconsistent with the ALJ's own findings, failed to adhere to authoritative policy relating to the Dictionary of Occupational Titles (DOT), relied on factually incorrect VE testimony, and erroneously evaluated his credibility. He requests remand for an award of benefits or, alternatively, for further administrative proceedings.

The Commissioner concedes judgment, but argues that the matter should be remanded for further administrative proceedings, rather than an award of benefits. The Commissioner asserts legitimate reasons for rejecting the opinions of Dr. Williams, credibility questions, and the possibility of substance abuse. The Commissioner concedes the ALJ's failure to properly evaluate plaintiff's obesity and diagnoses of mental impairments. Finally, the Commissioner states that the ALJ should have the option of ordering a mental consultative examination and using a medical expert to evaluate the record as a whole, and that vocational expert testimony is necessary, including an explanation as to any variations from the DOT.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve

no useful purpose." *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77. For the reasons described below, the undersigned agrees with the Commissioner that this case should be remanded for further administrative proceedings.

Treating Physician's Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id*.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,

01  plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.
02  1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,
03  the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec.*
04  *Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given
05  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]
06  functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's
07  reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony
08  legally insufficient; finding record fully developed and disability finding clearly required).

09  However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*
10  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there
11  were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated
12  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon
13  an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.* , 923 F. Supp.
14  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith
15  error, in that some of his stated reasons for rejecting a physician's opinion were legally
16  insufficient).

17  In this case, plaintiff asserts that the ALJ erroneously evaluated the opinions of treating
18  physician Dr. Williams, and that Dr. Williams' opinions should be credited as true. As this
19  argument forms the primary basis for plaintiff's claim for a remand for an award of benefits, a
20  thorough review of the ALJ's decision on this point is helpful.

21  The ALJ described the records from Dr. Williams as follows:

22  In August 2000, the claimant changed primary care providers again and started seeing

Dean Williams, M.D., at [Community Health Clinic (CHC)]. The claimant initially told Dr. Williams that "he is unable to continue work with no restrictions as it bothers his back." Dr. Williams observed that the claimant was "in no acute distress," with a normal and even gait, but remarked that the claimant's self-assessed limitation did not seem unreasonable. He also prescribed Percocet. Several months later, the claimant reported to Dr. Williams that his L & I claim had been closed following the IME examination, but he "intends to look into re-opening his claim again." He also reported trying to exercise four times a week on a treadmill, and asked to be weaned off Percocet. A subsequent notes indicates, however, that the claimant was unable to tolerate a change to, methadone, a long-acting narcotic and continued using Percocet.

In a March 23, 2001 letter to the Division of Disability Services (DDS), Dr. Williams stated that the claimant "required narcotics for management of [his] pain, but he has been working with us to taper it down as best as possible to remain as functional as possible." Dr. Williams also referred the claimant to physical therapy in August 2001, but a subsequent progress note indicates that the claimant was discharged for failure to attend scheduled appointments. Notably, a June 2002 MRI revealed mild multilevel degenerative changes without compression of neuro-structures.

In July 2004, the claimant returned to Dr. Williams with fresh complaints of radiculopathy. Dr. Williams scheduled the claimant for EMG and nerve conduction studies, but the claimant failed to show for this appointment, explaining that he was feeling sick. Two months later, Dr. Williams again tried to reschedule a neurology consult for the claimant, but the claimant declined stating "he wanted to lose weight first before he underwent further studies." In October 2004, an orthopedist similarly recommended an EMG study, but the claimant "did not want to follow through with it as he was trying to lose weight and hoped that the symptoms would subside." The claimant did not lose weight, however, and his symptoms did not apparently subside so that he continued to request Percocet for pain on a regular basis. In December 2004, Dr. Williams sent the claimant to a neurologist for an EMG nerve conduction study. Again, the claimant failed to make an appointment, claiming this time that "he was concerned about increased pain" and he was "worried about the nerve study."

(AR 22-23 (internal citations to record omitted.)) The ALJ later stated:

At his initial examination, Dr. Williams released the claimant to light duty work with some restrictions. Dr. Williams subsequently completed six physical evaluation forms for [Department of Social and Health Services (DSHS)] indicating that the claimant could perform sedentary work. Sedentary work is defined as lifting 10 pounds maximum and frequently lifting and/or carrying articles such as dockets, ledgers, and small tools. Although a sedentary job involves sitting, a certain amount of walking and standing may be necessary. Dr. Williams has also noted on several occasions that

the claimant exhibits no limitations on agility, mobility or flexibility (as exemplified by range of motion studies) or any environmental restrictions.

Shortly before the hearing, Dr. Williams testified that he "didn't mean to suggest that" in the six prior DSHS forms that the claimant could work full time. Rather, he now believed the claimant would be unable to sustain an 8-hour workday because he would need to leave work early or frequently miss work due to back pain. Dr. Williams also stated the severity of the claimant's pain symptoms are "marked" or "extreme," and the claimant's inconsistent reports of pain over time are best explained by the waxing and waning of symptoms.

(AR 24.)

The ALJ followed up the recitation of this evidence from Dr. Williams by discussing the other physician evidence in the record, stating:

The claimant's multiple treating, examining, and consulting physicians over the years have also assessed the nature and severity of the claimant's impairment and repeatedly released him to return to work. By doing so, none of these physicians have been willing to conclude that the claimant is permanently disabled by his back pain.

(*Id.* (also describing opinions of various physicians who cleared plaintiff for work from the time period shortly after his on-the-job injury to as late as February 2000.)) The ALJ also noted opinions of DDS physicians in March and May 2003 finding plaintiff capable of working with various restrictions. (AR 25.)

Ultimately, the ALJ found plaintiff capable of light work, with various restrictions. (AR 25-26.) He elaborated on the basis for this finding as follows:

These findings are based on the weight of the evidence as well as the consistency in expert opinion between the claimant's past treating and examining medical sources, and the DDS physician's RFC assessment indicating the above-referenced restrictions in the claimant's functional capacity. Insofar as DDS physician's assessment is based on a thorough review of the record, this expert opinion is well supported by medically acceptable clinical and laboratory techniques, as well as relevant motor examinations. [Social Security Ruling (SSR)] 96-9p. Moreover, even though Drs. Rohrenbach and McNett did not specifically rate the nature and severity of the claimant's functional

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

limitations, as the claimant's treating physicians and acceptable medical sources, their remarks regarding the claimant's lack of disability as well as Dr. McNett's refusal to restrict the claimant to a less than sedentary work capacity is entitled to considerable weight. 20 CFR §§ 404.1527 & 416.927.

The undersigned has also considered Dr. Williams multiple DSHS evaluations finding the claimant able to perform sedentary work. As the claimant's current treating physician, his opinions are generally entitled to considerable weight under the Regulations. 20 CFR §§ 404.1527 & 416.927. Here, however, Dr. Williams recently testified that he "didn't mean to suggest that" in the DSHS forms that the claimant could work full-time, because the claimant's pain is so "extreme" or "marked" that he is unable to work on a regular and continuing basis. The undersigned notes, however, that this testimony is completely inconsistent with Dr. William's prior recorded observations during every examination of the claimant noting that he is in "no acute distress." It is also externally inconsistent with the weight of the expert opinion evidence substantiating the claimant's capacity. Accordingly, little weight is given to Dr. William's [stet] testimony regarding the nature and severity of the claimant's impairment-related limitations.

(*Id.*)

Plaintiff points out that, while stating on numerous reports to DSHS that the maximum exertional level plaintiff could perform at least half-time in a normal day-to-day work setting was sedentary, Dr. Williams also estimated on each of those forms the various time periods in which he concluded plaintiff would be *unable* to perform at least half-time in a normal day-to-day work setting. (*See* AR 254, 270, 275, 287, 297, 315, 324, 423.) He points to Dr. Williams' April 2005 declaration as clarifying this point:

> Q    You completed about six [DSHS reports]. On them, you marked that Mr. Jermyn could perform sedentary work . . . . When you completed this did you mean that he could perform these activities in a competitive work environment on a full-time basis that is eight hours a day, five days a week?
>
> A    No. Usually, they don't ask for those parameters, but in terms of can he manage to lift that amount in a certain period, yes, but he would be very limited, so I didn't mean to suggest that he could work full-time.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01   (AR 451.) That same declaration contains the testimony identified by the ALJ as to plaintiff's

02   marked to extreme limitations. (*See id.* ("I think his back pain right now . . . would extremely limit

03   his ability to follow through with [a full time schedule]. . . . In general, marked to extreme. From

04   the pain standpoint itself marked, and then I think if we add depression onto that, it is clearly

05   extreme."))

06         Plaintiff also takes issue with the ALJ's reliance on the fact that Dr. Williams did not find

07   him in "acute distress" during examinations, as well as the ALJ's reliance on opinions dated well

08   prior to his alleged onset date. Additionally, plaintiff asserts the ALJ's failure to recognize that

09   Dr. Williams grounded his opinions in objective medical evidence (*see* Dkt. 12 at 11 (providing

10   numerous citations to DSHS evaluations and other medical records from Dr. Williams)), and notes

11   that Dr. Williams, unlike the ALJ, adequately considered the combined impact of plaintiff's

12   impairments, including his obesity and depression (*see, e.g.,* AR 446-50).

13         The Commissioner argues that the ALJ gave specific and legitimate reasons for rejecting

14   the opinions of Dr. Williams. However, as noted in plaintiff's reply, the majority of those

15   arguments are either inconsistent, rely on improper post hoc rationalizations, or are otherwise

16   unresponsive to plaintiff's specific contentions. ( *See* Dkt. 14 at 4-5 and Dkt. 16 at 3-5.)

17   Nonetheless, the undersigned agrees with the Commissioner's underlying assertion that Dr.

18   Williams' opinions should not be credited as true.

19         As reflected in the excerpts from the ALJ's decision copied above and in the citations

20   supporting plaintiff's argument on this point, the ALJ misinterpreted Dr. Williams' opinions

21   regarding plaintiff's ability to work. That is, while the ALJ checked the sedentary box on the

22   DSHS forms as to plaintiff's maximum exertional level, he consistently found plaintiff unable to

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

work on those same forms. Nor is the fact that Dr. Williams noted no acute distress during various physical evaluations a persuasive justification for disregarding this treating physician's opinions. It does not necessarily follow that an individual deemed markedly to extremely limited by pain must be observed to be in acute distress during the time of physical examinations.

However, the ALJ reasonably found Dr. Williams' opinions inconsistent with the weight of the expert opinion evidence in the case. Although correctly noting the earlier dates of the opinions relied on by the ALJ, plaintiff does not provide evidence disputing the ALJ's general proposition,[3] or evidence showing his condition had substantially worsened by the time he began seeing Dr. Williams. Moreover, the ALJ's decision contains additional reasoning which appears to rely substantially on support from Dr. Williams' own records. Specifically, at step three, the ALJ declined to find plaintiff's degenerative disc disease met a listing, stating:

> To meet or equal a listing for degenerative disc disease, the Regulations require "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and if there is involvement of the lower back, positive straight-leg raising test . . . ". 1.04(a). Here, the medical evidence has consistently shown there are no neurological deficits associated with the claimant's chronic pain, and the claimant has avoided updating his EMG nerve conduction studies to assess his neurologic symptoms. Moreover, all of the claimant's examining, consulting, and treating physician's have consistently emphasized conservative management of the claimant's pain symptoms, including exercise and physical therapy, as opposed to surgical intervention. The claimant, however, has not consistently followed through with recommended treatment, physical therapy, or exercise, and was, in fact, discharged from physical therapy for failure to keep his appointments. Instead, he has relied on

---

[3] Plaintiff does note that the ALJ found less restrictive limitations than did physicians on earlier occasions. (*See* Dkt. 12 at 12-13 (noting the ALJ found plaintiff could lift twenty pounds while a physician previously found plaintiff could lift only ten pounds, and that the ALJ found plaintiff could perform the prolonged sitting required by sedentary work, while a physician previously found he could not do so.)) In light of the record as a whole, however, this argument is not compelling.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01     short-term opiate-based pain medications for over 9 years, even though he has
02     repeatedly stated that he would like to taper off these highly addictive medications.

03 (AR 23.) Although relied on at step three, and not specifically mentioning Dr. Williams, this

04 reasoning also calls into question the propriety of crediting as true Dr. Williams' testimony as to

05 plaintiff's inability to work.

06     In sum, even taking the opinions of Dr. Williams as true, the record does not compel a

07 finding of disability. Instead, the ALJ should reassess Dr. Williams' opinions, as well as those

08 issues addressed below, in further administrative proceedings.

09 Credibility

10     Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

11 reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See*

12 *also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an

13 ALJ must render a credibility determination with sufficiently specific findings, supported by

14 substantial evidence. "General findings are insufficient; rather, the ALJ must identify what

15 testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81

16 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her

17 conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings."

18 *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the

19 ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between

20 his testimony and his conduct, his daily activities, his work record, and testimony from physicians

21 and third parties concerning the nature, severity, and effect of the symptoms of which he

22 complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ rendered the following credibility decision in this case:

> The undersigned has also considered the claimant's subjective reports of pain as well as his mother's reports, and finds this testimony to be credible insofar as it is supported by objective evidence in the record. Here, however, even though the medical evidence establishes that the claimant has mild degenerative disc disease, there is a paucity of objective medical evidence supporting his claimed severe limitations. Rather, medical examinations have demonstrated time and again the claimant's motor strength, range of motion, and function in his lower extremities, while diagnostic testing has failed to reveal neurological deficits. Moreover, conservative management of his symptoms, rather than surgery, has been consistently recommended by the claimant's treating providers over the years. On this point, the claimant's credibility with respect to his symptoms, pain, and functional capacity are seriously called into question by his failure to follow through on recommended treatments for over 9 years, his primary reliance on opiate-based pain medications, as well as his many changing stories about the severity, intensity, and location of his pain. Indeed, the record shows that the claimant's L & I claim was closed due to the lack of medical evidence supporting his claims, although the claimant blames his 1996 on-the-job injury for his current condition. Notably, he has never sought to reopen this claim, but settled his claim for $5,000. In addition, he claimed at the hearing that he "wants to work" but has never contacted DVR, despite repeated encouragement to do so.

(AR 26-27 (internal citation to record omitted.))

Plaintiff first asserts that the ALJ found him not credible due to his activities of daily living and disputes that his daily activities disprove his claim. *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.") However, the ALJ does not seem to directly make such a point in his credibility decision. Instead, he elsewhere in the decision contrasts plaintiff's testimony in the hearing on this point with an earlier report plaintiff made in a questionnaire. (*See* AR 25.) In any event, even if the ALJ did rely on this point in rendering his credibility decision, this reliance would be reasonable, *see Light*, 119

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01 F.3d at 792, and only one of several reasons provided for finding plaintiff not entirely credible.

02 Plaintiff next argues that the ALJ's reliance on the fact that plaintiff uses narcotic medication stands the usual credibility analysis on its head, noting that an ALJ typically rejects a claimant's statements of serious pain when the claimant does not take or seek out such medication. *See, e.g., Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (affirming credibility decision based, in part, on the fact that the plaintiff infrequently used pain medication). However, the ALJ here relied not merely on the fact that plaintiff takes narcotic pain medication, but on the fact that he failed to follow through with recommended treatment for over nine years, instead primarily relied on narcotics to manage his pain, and repeatedly changed his reports regarding his pain. As stated at step three, the ALJ found significant that, instead of following through with recommended treatment, physical therapy, or exercise, plaintiff "has relied on short-term opiate-based pain medications for over 9 years, even though he has repeatedly stated that he would like to taper off these highly addictive medications." (AR 23.)

Given the above, plaintiff fails to establish that the ALJ erred in assessing his credibility. However, if implicated by the ALJ's reassessment of the opinions of Dr. Williams, or any of the other issues addressed below, the ALJ should reassess plaintiff's credibility on remand.

### Substance Abuse

In arguing the sufficiency of the ALJ's credibility decision, the Commissioner noted that the record contains notations of street drug abuse (*see* AR 344) and asserts that the record generally raises the question of possible prescription drug abuse (*see, e.g.*, AR 361). The Commissioner avers that the ALJ did not properly evaluate this apparent substance abuse and should do so on remand. *See* 20 C.F.R. §§ 404.1535, 416.935.

Plaintiff rejects the propriety of this request, noting the ALJ did not himself find plaintiff had a substance use disorder and asserting that the Commissioner lacks standing to attack the ALJ's decision as too favorable to plaintiff with respect to this issue. *See* 42 U.S.C. § 405 (g) (ALJ's "final decision" at issue on judicial review); 20 C.F.R. § 422.210(a) (the Commissioner's final decision is the ALJ's decision when the Appeals Council denies a request for review); *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (court may not affirm an agency decision based on grounds agency did not invoke in its decision). Plaintiff adds that none of the citations relied on by the Commissioner in support of this argument reflect any formal diagnosis of a substance use disorder.

On remand, "[a]ny issues relating to [plaintiff's] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in [his] case." 20 C.F.R. §§ 404.983, 416.1482. Accordingly, should the ALJ find it appropriate, he may consider this issue on remand.

Medical Expert and Consultative Examiner

In arguing in support of further administrative proceedings, the Commissioner asserts that the ALJ should be given the option of ordering a mental consultative examination to further evaluate any mental impairments, and a medical expert to evaluate the record as a whole and to clarify the nature and severity of plaintiff's impairments. Plaintiff responds that the Court should not order relief plaintiff did not seek and notes that, regardless, an ALJ always has the option of obtaining such an examination and testimony.

As indicated by plaintiff, the ALJ is free to secure the services of a medical expert and order a mental consultative examination on remand. *Cf.* 20 C.F.R. §§ 404.983, 416.1482.

Therefore, the Court may utilize these options on remand as deemed appropriate.

## Other Issues for Consideration on Remand

As indicated above, the Commissioner concedes that the ALJ erred in his decision in several respects. The Commissioner also failed to directly address several alleged errors raised by plaintiff. The undersigned construes the latter as admission of error. Accordingly, in addition to the above, the ALJ should do all of the following:

- Properly evaluate plaintiff's obesity, including the aggravating impact of that condition. *See* SSR 02-1p.

- Properly evaluate plaintiff's mental condition, including evidence of anxiety and depression. *See* 20 C.F.R. 404.1520a (describing required technique for evaluation of mental impairments).

- Proffer a hypothetical to a VE including all limitations assessed by the ALJ, including, but not limited to, limitations of only occasionally climbing stairs, balancing, and reaching overhead. *See Thomas*, 278 F.3d at 956 (a hypothetical posed to a vocational expert must include all of the claimant's functional limitations supported by the record); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (a vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to support a finding that a claimant can perform jobs in the national economy).

- Inquire into the consistency of the VE's testimony with the DOT and obtain a reasonable explanation for any apparent conflict. SSR 00-4p. *See also Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995) ("[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the

deviation.")[4]

Also, as indicated above, the ALJ should clarify both the onset date and the date after which plaintiff is deemed to have not engaged in SGA. *See supra* n. 2.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this <u>24th</u> day of October, 2006.

Mary Alice Theiler
United States Magistrate Judge

---

[4] Plaintiff also argues that the VE's testimony was factually incorrect and therefore unreliable. However, given that further administrative proceedings will require new vocational expert testimony, this issue appears to be moot.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -17